# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| AMERICAN LEGEND HOMES, | § § | |
| *Plaintiff*, | § § | Civil Action No. 4:19-cv-00035 |
| v. | § § | Judge Mazzant |
| NAVIGATORS SPECIALTY INSURANCE COMPANY, | § § § § § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff American Legend Homes's Motion for Leave to File First Amended Complaint Adding Parties and Updating Factual Allegations and Claims (Dkt. #8).

After reviewing the relevant pleadings and motions, the Court finds the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

### I. Factual Background

Plaintiff American Legend Homes ("Plaintiff") is a family-owned residential home builder that has built thousands of homes in North Texas over the past fifteen years. Plaintiff is a Texas limited liability company (LLC) with its principal place of business in Lewisville, Texas. Plaintiff's members are Bright Industries, LLC, American Legend Services, Inc., and AmLegend Management, Inc.—all Texas residents. Defendant Navigators Specialty Insurance Company ("Defendant") is an eligible surplus lines insurance company with its principal place of business in New York.

Plaintiff built over sixty homes in the Castle Hills Villas development, a master-planned development in Lewisville, Texas, utilizing an identical foundation design and construction

process on every home built. However, sometime after completion of the project, certain homes that Plaintiff built in Castle Hills Villas began to experience shifting foundations. Plaintiff commenced an investigation into the cause of the damage; the investigation concluded that the Castle Hills Villas development had a naturally occurring underground water source beneath it. The houses in the path of that underground water source were the homes that experienced foundation shifting.

Between October 1, 2014 and October 1, 2015, nineteen homeowners in the Castle Hills Villas reported foundation issues. Twenty-five other homeowners in Castle Hills Villas reported similar issues between October 1, 2015 and October 1, 2016. Five more homeowners reported foundation issues between October 1, 2016 and December 1, 2017. Due to foundational damage reported at the homes, Plaintiff has incurred over $2 million in expenses to repair the damage caused by the underground water source.

Defendant issued and delivered Commercial General Liability policies to Plaintiff in Lewisville, Texas. Such policies normally cover sums that the insured becomes legally obligated to pay because of "property damage" that occurs during the policy period caused by an "occurrence" (Dkt. #1). The policies define "property damage" to include "physical injury to tangible property" (Dkt. #1). The policies also define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" (Dkt. #1). The policies also contain an Amendatory Endorsement providing that "[a]ll . . . Property Damage arising out of substantially the same general harmful conditions shall be deemed to be one occurrence" (Dkt. #1).

After Plaintiff became aware of the foundational issue with the homes in the Castle Hills Villas development, it notified Defendant of the issue and made an insurance claim. The claim

2

was for all sums Plaintiff was legally obligated to pay arising from the property damage to the homes' foundations caused by the underground water source. Defendant has not paid the claim, contending that "each home affected involves a separate occurrence" to which a separate deductible applies (Dkt. #1). For the homes sustaining property damage between October 1, 2014 and October 1, 2015, Defendant would apply a $50,000 deductible to each home. For those sustaining damage after October 1, 2015, Navigator would apply a $500,000 deductible to each. This would amount to a $20 million total deductible for all the property damage.

Plaintiff's costs to repair each foundation allegedly would fall well below the $500,000 threshold and thus would not reach the "per home" deductible claimed by Defendant. Defendant contends that the separate deductible applies to each individual home, and Defendant has paid no portion of the damages in Plaintiff's claim thus far. Nor has Defendant paid any amounts for the "per home" deductible it claims is applicable.

Plaintiff's specific legal claims are (1) breach of contract; (2) Declaratory Judgment under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202; and (3) attorneys' fees. Plaintiff seeks leave to amend to update factual allegations and claims and add two additional defendants: United Specialty Insurance Company ("USIC"), an insurance company with its principal place of business in Texas; and Knight Specialty Insurance Company ("KSIC"), an insurance company with its principal place of business in California.

## II. Procedural History

On January 16, 2019, Plaintiff filed a Complaint against Defendant (Dkt. #1). On March 25, 2019, Defendant filed an Answer (Dkt. #3). On July 3, 2019, Plaintiff moved for leave to file First Amended Complaint adding parties and updating factual allegations and claims (Dkt. #8). On July 17, 2019, Defendant filed a Response (Dkt. #10). On July 24, 2019, Plaintiff filed a Reply

(Dkt. #11). On August, 5, Plaintiff filed its Notification of Confirmation of USIC's Texas Citizenship (Dkt. #12).

## ANALYSIS

**I.    Joinder of USIC**

  *A.    Rule 19*

Plaintiff moves the Court for leave to amend to add USIC as a defendant. The parties agree that USIC is nondiverse and that, consequently, USIC's presence in the case would divest the court of jurisdiction. But the parties dispute whether USIC is an indispensable party under Rule 19(b) and thus whether USIC must be joined regardless of whether joinder would divest the Court of its diversity jurisdiction.

After consideration, the Court finds that USIC is not a necessary party under Rule 19(a). USIC's absence from the suit will not prevent the Court from according complete relief among the existing parties—that is, among American Legend Homes and Navigators Specialty Insurance Company. *See* FED. R. CIV. P. 19(a)(1)(A). Indeed, whether USIC is part of the action does not bear on Defendant's potential liability to Plaintiff or the damages, if any, it may owe. Moreover, neither factor under Rule 19(a)(1)(B) is implicated here. Disposing of this action in the absence of USIC would not impair its ability to protect its interest, if any, in this action, nor would it subject Plaintiff or Defendant to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations." FED. R. CIV. P. 19(a)(1)(B)(i)–(ii). Accordingly, because USIC is not a "necessary" party under Rule 19(a)—that is, not a "party who is required to be joined if feasible"—it is not an "indispensable" party under Rule 19(b). *See* FED. R. CIV. P. 19(b).

  *B.    The* Hensgens *factors*

The Court has discretion "when confronted with an amendment to add a nondiverse nonindispensable party." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). Often, the Court confronts this decision in cases where the defendant has removed a case originally filed in state court. In that situation, if the Court allows the amendment of the nondiverse defendant, it then must remand to the state court. *Id.* at 1182. If not, the federal court maintains jurisdiction. *Id.* To guide courts in determining whether to exercise their discretion to allow the amendment of a nondiverse party, the Fifth Circuit in *Hensgens* provided a four-prong balancing test. *Id.*

The four *Hensgens* factors are as follows: (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction," (2) "whether plaintiff has been dilatory in asking for amendment," (3) "whether plaintiff will be significantly injured if amendment is not allowed," and (4) "any other factors bearing on the equities." *Id.*

This judicial district, in *Sam Rayburn Municipal Power Agency v. Gillis*, has determined that the *Hensgens* factors apply in cases originally filed in federal court when a party seeks to add a nondiverse party. No. 1:14-cv-202, 2015 WL 410268, at *4 (E.D. Tex. Jan. 30, 2015) (finding "no compelling reason why, merely because this case was originally filed in federal court, an amendment that would divest the court of jurisdiction should be treated differently" than it would in a removed case); *see also Hensgens*, 833 F.2d at 1182 ("The principles of jurisdiction involving removed cases are similar to cases brought originally in the district court."). The Court will accordingly apply the four *Hensgens* factors to determine whether to grant Plaintiff's amendment.

1. Factor One: Was the purpose of the amendment to defeat jurisdiction?

The first *Hensgens* factor, which analyzes the extent to which the purpose of the amendment is to defeat federal jurisdiction, weighs in favor of denying Plaintiff's motion to amend. Under this factor, courts consider whether Plaintiff knew or should have known the

identity of the nondiverse Defendant when the state court complaint was filed. *Priester v. Long Beach Mortg. Co.*, No. 4:10–cv–641, 2011 WL 6116481, at *2 (E.D. Tex. Dec. 8, 2011).

Though this case did not involve a state court complaint, Plaintiff appeared to know the identity of USIC and KSIC early in the action. (Dkt. #9). In fact, Plaintiff's First Amended Complaint asserts that all three parties—Navigators, USIC, and KSIC—were notified after Plaintiff became aware of the damage to the homes. (Dkt. #9). Specifically, paragraph twenty-three of Plaintiff's First Amended Complaint asserts that Plaintiff "notified Navigators, USIC and KSIC and made an insurance claim" for all the sums it became obligated to pay as a result of the damage to the homes (Dkt. #9). This strongly suggests Plaintiff had knowledge of all the potential defendants in the suit at the time the original Complaint was filed.

These facts persuade the Court that Plaintiff knew of the parties' proposed role from the start of the suit and chose not to add them as Defendants at that time. Thus, the first factor weighs slightly in favor of denying Plaintiff's proposed amendment, as it seems the purpose of the amendment was to defeat federal jurisdiction.

2. Factor Two: Was Plaintiff dilatory in seeking the amendment?

The second factor in the analysis—whether Plaintiff was dilatory in seeking leave to amend—also weighs in favor of denying Plaintiff's proposed amendment. Under the second *Hensgens* factor, courts typically find that a Plaintiff "is not dilatory in seeking to amend a complaint when no trial or pre-trial dates were scheduled and no significant activity beyond the pleading stage has occurred." *Priester*, 2011 WL 6116481, at *2 (quoting *Smith v. Robin Am., Inc.*, No. H–08–3565, 2009 WL 2485589, at *6 (S.D. Tex. Aug. 7, 2009)); *Ogunro v. Allstate Vehicle & Prop. Ins. Co.*, No. 3:18-cv-1784-B, 2019 WL 111213, at *3 (N.D. Tex. Jan. 4, 2019).

In this case, the trial and pre-trial dates had been scheduled by the time the Plaintiff sought leave to amend on July 3, 2019. Indeed, the Court entered a scheduling order in this case on June 10, 2019 (Dkt. #6). That scheduling order set the important pretrial dates for this case, including the date of the February final pretrial conference, as well as the April trial window. Moreover, significant activity beyond the pleadings had already occurred by the time Plaintiff sought to amend. The parties, including KSIC and USIC, participated in mediation on June 25, 2019 (Dkt. #9).

In addition, courts "often look to the amount of time that has passed between the filing of the original complaint and the amendment and the amount of time between removal and the amendment." *Tomlinson v. Allstate Indem. Co.*, No. Civ.A.06-0617, 2006 WL 1331541, at *4 (E.D. La. May 12, 2006) (quoting *Schindler v. Charles Schwab & Co.*, No. Civ.A.05-0082, 2005 WL 1155862, at *4 (E.D. La. May 12, 2005)). Though there was no removal here, the Complaint (Dkt. #1) was filed nearly seven months before Plaintiff sought leave to amend (Dkt. #8). *See Priester*, 2011 WL 6116481, at *2 (finding that plaintiffs were dilatory in moving for leave to amend when the motion to amend was filed more than two months after removal); *Phillips v. Delta Air Lines, Inc.*, 192 F. Supp. 2d 727, 729 (E.D. Tex. 2001) (finding that plaintiffs were dilatory when they waited over two months after filing the state court petition, and almost thirty days after removal, to move to amend).

Finally, courts may consider "other time periods if, for example, the appropriateness of adding the nondiverse plaintiff only became apparent after some other event." *Ogunro*, 2019 WL 111213, at *3. In *Ogunro*, the court suggested that a delay in amending to add new parties may not be dilatory if the plaintiff learned of new relevant facts later in the litigation process—for example, through mediation. *Id.* In such a circumstance, the court explained, the relevant period

7

of time to consider would be the time between the mediation date and the date plaintiffs filed the motion to amend rather than between the removal date and the date of the motion to amend. *Id.* The court, however, declined to use the mediation date as the starting point because the record did not indicate that the plaintiff learned new facts during mediation. *Id.*

Similarly, the record here does not indicate that Plaintiff learned new facts during mediation. Thus, the Court considers the seven-month period from the time Plaintiff filed its complaint until it moved for leave to amend—rather than the one-week period from the mediation date until Plaintiff moved for leave to amend—when determining whether Plaintiff was dilatory. In view of the foregoing factors, the Court finds that Plaintiff was dilatory in filing its motion to amend. Thus, the second factor weighs in favor of denying Plaintiff's proposed amendment.

3. Factor Three: Will Plaintiff be significantly injured if amendment is not allowed?

The third *Hensgens* factor—whether Plaintiff will be significantly injured if the amendment is not allowed—is either neutral or counsels slightly in favor of granting Plaintiff's proposed amendment. Under the third factor, courts consider whether denying the amendment would create inconsistent or inefficient parallel proceedings between state and federal courts. *See Priester*, 2011 WL 6116481, at *3; *Ogunro*, 2019 WL 111213, at *4. Courts suggest that parallel proceedings could impose harsh financial burdens on the plaintiff while wasting judicial resources in multiple courts on the same issues. *Schindler*, 2005 WL 1155862, at *4. Similarly, courts seek to avoid inconsistencies between state and federal decisions in parallel proceedings. *See Mia Reed and Co. Ltd. v. United Fire and Gas Co.*, No. H–10–4440, 2012 WL 2499932, at *9 (S.D. Tex. June 27, 2010). However, courts may decline to find an injury to the plaintiff when the plaintiff has an alternate route to pursue his claims. *See Ogunro*, 2019 WL 111213, at *4.

Here, declining to join USIC may result in an injury to Plaintiff because it would require Plaintiff to pursue parallel proceedings in state and federal court. Although it is not clear whether this would result in inconsistent relief, that risk would certainly be present. Accordingly, the Court finds this factor weighs slightly in favor of granting Plaintiff's amendment.

4. Factor Four: Are there other factors bearing on the equities?

The fourth and final *Hensgens* factor requires the Court to analyze other equitable factors. Although equitable factors include whether granting leave to amend would deprive a defendant of a properly invoked federal forum and whether denying leave to amend would result in parallel state court proceedings, these factors are likely to be present whenever a plaintiff seeks to add a nondiverse defendant. Those factors have already been analyzed in considering the first three *Hensgens* factors. Because neither party points to additional equitable factors beyond these considerations, the fourth *Hensgens* factor is neutral.

Accordingly, the Court finds the first and second factors weigh in favor of denying Plaintiff's proposed amendment, the third factor weighs slightly in favor of granting Plaintiff's proposed amendment, and the fourth factor is neutral. Thus, on balance, the *Hensgens* analysis weighs in favor of denying Plaintiff's motion for leave to amend to add USIC as a party.

## II. Joinder of KSIC

Plaintiff also moves for leave to amend to add KSIC as a party defendant. For the following reasons, the Court finds that this motion should be granted.

Rule 15(a) instructs the court to "freely give leave when justice so requires." FED. R. CIV. P. 15(a). The rule "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). But leave to amend "is not automatic." *Matagorda Ventures,*

*Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Whether to allow amendment "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992). A district court reviewing a motion to amend pleadings under Rule 15(a) considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Smith v. EMC*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

With respect to the first factor, the Court finds that there was no undue delay. Federal courts within the Fifth Circuit have found that there is a presumption of timeliness if the movant files its motion to amend by the court-ordered deadline. *See, e.g.*, *Arrieta v. Yellow Transp., Inc.*, No. CIV.A. 305CV2271-D, 2007 WL 2051115, at *1 (N.D. Tex. July 13, 2007). Here, Plaintiff filed its motion for leave to amend by the court-ordered deadline. Thus, the Court is satisfied that there was no undue delay here and finds that the first factor weights in favor of granting leave to amend.

As for the second factor, the Court finds that there was dilatory motive. The issue of dilatory motive has been discussed at length in the foregoing analysis. Accordingly, the Court finds that this factor weighs against granting leave to amend.

Third, the Court finds that there was no repeated failure to cure deficiencies by previous amendments. Thus, the third factor counsels in favor of granting leave to amend. Similarly, the fourth factor counsels in favor of granting leave to amend. Indeed, the Court sees no reason why Defendant would face undue prejudice by the addition of KSIC to the suit. Finally, neither party

argues that amendment would or would not be futile. Accordingly, the Court considers the fifth factor neutral.

Thus, the Court finds that the first, third, and fourth factors weigh in favor of granting Plaintiff's motion for leave to amend. The second factor weights against granting Plaintiff's motion, and the fifth factor is neutral. On balance, therefore, the factors weigh in favor of granting Plaintiff's motion for leave to amend to add KSIC as a defendant.

### III. Updating factual allegations and claims

The Court notes as a final matter that Plaintiff also moves for leave to amend to update its factual allegations—primarily concerning damages—and add an extra-contractual claim against Defendant (Dkt. #8). For the same reasons as discussed in section II, *supra*, the Court finds that this motion should be granted.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiff's Motion for Leave to File First Amended Complaint Adding Parties and Updating Factual Allegations and Claims (Dkt. #8) is **GRANTED in part** and **DENIED in part**. Plaintiff may amend its pleadings to add KSIC as a party and to update factual allegations and claims, but it may not join USIC as a party.

**IT IS SO ORDERED.**

SIGNED this 5th day of November, 2019.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE